No. 25-10114-H

In the
**United States Court of Appeals
For the Eleventh Circuit**

BRIONTÉ McCORKLE et al.,

*Plaintiffs – Appellants*

v.

SECRETARY OF STATE FOR THE STATE OF GEORGIA,

*Defendant – Appellee*

Appeal from the United States District Court
For the Northern District of Georgia

**APPELLANTS' BRIEF**

Samuel Lester Tate, III
Akin & Tate, PC
Post Office Box 878
11 South Public Square
Cartersville, Georgia 30120
(770) 382-0780
lester@akin-tate.com

Bryan L. Sells
The Law Office of
Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

*Attorneys for the Plaintiffs–Appellants*

**McCorkle v. Secretary of State for the State of Georgia
25-10114-H**

**Certificate of Interested Persons
and
Corporate Disclosure Statement**

The counsel below certifies that the following persons and

entities have or may have an interest in the outcome of this case:

Akin & Tate, PC

Carr, Christopher

Clark Hill PLC

Georgia Conservation Voters Education Fund, Inc.

Georgia WAND Education Fund, Inc.

Jacoutot, Bryan Francis

LaRoss, Diane Festin

McCorkle, Brionté

Petrany, Stephen

Raffensperger, Brad

Ray II, William

C-1 of 2

## McCorkle v. Secretary of State for the State of Georgia
## 25-10114-H

Sells, Bryan L.

Tate, Samuel Lester III

The Law Office of Bryan L. Sells, LLC

Tyson, Bryan P.

Young, Elizabeth

Counsel further certifies that neither Georgia Conservation Voters Education Fund, Inc. nor Georgia WAND Education Fund, Inc. has a parent company and that no publicly held corporation owns 10 percent or more of their stock.

**/s/ Bryan L. Sells**
Georgia Bar No. 635562
Attorney for the Plaintiffs-Appellants
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

C-2 of 2

3

## Statement Regarding Oral Argument

This appeal is about House Bill 1312, a 2024 Georgia statute that purports to change the constitutional terms of members of Georgia's Public Service Commission (PSC). That statute is a brazen violation of the Georgia Constitution, and it also violates the United States Constitution under a long-standing precedent of this Court. *See Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir. 1981) (holding that state officials violate the Due Process Clause if they disenfranchise voters in violation of state law)[1]; *see also Kemp v. Gonzalez,* 310 Ga. 104, 113 (2020) (holding that the General Assembly may not, by statute, alter a term of office prescribed by Georgia's Constitution). A unanimous panel of this Court recently reaffirmed *Duncan* in *Gonzalez v. Governor of Georgia*, 978 F.3d 1266 (11th Cir. 2020) (Branch, J.) (holding that a state statute purporting to change a district attorney's constitutional term of office violates the Due Process Clause).

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The district court, Judge William Ray II, apparently disagreed with *Gonzalez* and chose not to follow it. But *Gonzalez* is controlling authority in this circuit, and this Court is bound to follow it. Oral argument is therefore unnecessary because *Gonzalez* squarely determines the outcome of this straightforward appeal.

# Table of Contents

Certificate of Interested Persons and
    Corporate Disclosure Statement ..................................... 2

Statement Regarding Oral Argument ...................................... 4

Table of Contents ...................................................................... 6

Table of Citations ...................................................................... 7

Statement of Jurisdiction ....................................................... 10

Statement of the Issues .......................................................... 11

Statement of the Case ............................................................. 12

   I.     House Bill 1312 ............................................ 12

   II.    Procedural History ...................................... 16

Standards of Review ............................................................... 19

Summary of the Argument ..................................................... 20

Argument ................................................................................. 22

   I.     The complaint states a federal claim. ........................ 22

   II.    McCorkle has standing to bring this claim. ............... 25

   III.   Judgment on the pleadings is premature. ................. 28

Conclusion ............................................................................... 30

Certificate of Compliance ...................................................... 33

Addendum ............................................................................... 34

House Bill 1312 ....................................................................... 35

## Table of Citations

**Cases**

*Bonner v. City of Prichard,*
661 F.2d 1206 (11th Cir. 1981) ........................................ 4

*Cannon v. City of West Palm Beach,*
250 F.3d 1299 (11th Cir. 2001) ....................................... 19

\* *Duncan v. Poythress,*
657 F.2d 691 (5th Cir. 1981) ......................................... 4, 20-26, 30

*Flora v. Home Federal Savings & Loan Association,*
685 F.2d 209 (7th Cir. 1982) ......................................... 29

*Gill v. Whitford,*
585 U.S. 48 (2018) ................................................... 27

\* *Gonzalez v. Governor of Georgia,*
978 F.3d 1266 (11th Cir. 2020) ....................................... 4, 20-26, 30

*Gonzalez v. Kemp,*
470 F. Supp. 3d 1343 (N.D. Ga. 2020) ................................. 25

*Hill v. White,*
321 F.3d 1334 (11th Cir. 2003) ....................................... 19

*Jacobson v. Florida Secretary of State,*
974 F.3d 1236 (11th Cir. 2020) ....................................... 25, 27

*Jefferson Fourteenth Associates v. Wometco de Puerto Rico, Inc.,* 695 F.2d 524 (11th Cir. 1983) ................................ 29

*Kemp v. Gonzalez,*
310 Ga. 104 (2020) ................................................... 4, 16

*Lillian B. ex rel. Brown v. Gwinnett County School District,*
631 F. App'x 851 (11th Cir. 2015) .................................... 28

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................... 25

*Samara v. Taylor*,
    38 F.4th 141 (11th Cir. 2022)..................................................... 19

*Sierra v. City of Hallandale Beach*,
    996 F.3d 1110 (11th Cir. 2021) ................................................. 19

*Surtain v. Hamlin Terrace Foundation*,
    789 F.3d 1239 (11th Cir. 2015) ................................................. 29

*United States v. Gupta*,
    572 F.3d 878 (11th Cir. 2009) ................................................... 31

*Wood v. Raffensperger*,
    981 F.3d 1307 (11th Cir. 2020) ............................................ 27, 28

**Statutes**

28 U.S.C. § 1291 ............................................................................. 10

28 U.S.C. § 1331 ............................................................................. 10

28 U.S.C. § 455 ............................................................................... 31

O.C.G.A. § 21-2-504 .................................................................. 16, 24

O.C.G.A. § 21-2-540 ...................................................................... 16

O.C.G.A. § 46-2-1 .............................................................. 12, 13, 16

O.C.G.A. § 46-2-4 .......................................................................... 16

**Constitutional Provision**

Ga. Const. art. IV, §I, ¶1. .............................................................. 12

## Other Authorities

Federal Rule of Appellate Procedure 32 ......................................... 33

Federal Rule of Civil Procedure 12 ......................... 19, 20, 21, 28, 30

Federal Rule of Civil Procedure 7 .................................................. 28

## Statement of Jurisdiction

This is an appeal from a final judgment of the district court entered on January 13, 2025. (App. 21 at 1.)[2] The plaintiffs filed their notice of appeal on the same day. (App. 22 at 1.) This Court therefore has jurisdiction under 28 U.S.C. § 1291.

The district court had subject-matter jurisdiction because this case presents a federal question. 28 U.S.C. § 1331.

---

[2] Throughout this brief, citations to the Appendix will be in the form "App. Tab at Page."

## Statement of the Issues

1.      Does a registered voter state a claim for relief under the Due Process Clause by alleging that state officials have disenfranchised her in violation of state law?

2.      Does a registered voter have standing to challenge a state statute that unlawfully cancels elections in which she would otherwise be able to vote?

3.      May a court grant judgment on the pleadings on its own motion before the pleadings are closed and without giving the parties notice and an opportunity to respond?

## Statement of the Case

### I.    House Bill 1312

Article IV, Section I, Paragraph 1(a) of the Georgia

Constitution provides as follows:

> There shall be a Public Service Commission for the
> regulation of utilities which shall consist of five
> members who shall be elected by the people. The
> Commissioners in office on June 30, 1983, shall serve
> until December 31 after the general election at which
> the successor of each member is elected. Thereafter, **all
> succeeding terms of members shall be for six
> years.** Members shall serve until their successors are
> elected and qualified. A chairman shall be selected by
> the members of the commission from its membership.

Ga. Const. art. IV, §I, ¶1(a) (emphasis added). The jurisdiction,

powers, and duties of the PSC are prescribed by state law, and they

include broad governmental authority to supervise and regulate

common carriers, railroads, and public utilities. O.C.G.A. § 46-2-1

*et seq*. Among many other duties, the PSC regulates the rates that

Georgians may be charged by electric, natural gas, and telephone

companies.

Before the enactment of House Bill 1312 in 2024, members of

the PSC were elected at large by all Georgia voters in partisan

elections to serve staggered six-year terms. O.C.G.A. § 46-2-1. Although elected at large, members of the PSC are required to reside in one of five districts prescribed by statute. *Id.*

The term of office for each current Commissioner before House Bill 1312 is set forth in Table 1.

**Table 1: PSC Terms of Office before House Bill 1312**

| District | Commissioner | Term Start | Term End |
|---|---|---|---|
| 1 | Jason Shaw | Jan. 1, 2021 | Dec. 31, 2026 |
| 2 | Tim Echols | Jan. 1, 2017 | Dec. 31, 2022 |
| 3 | Fitz Johnson | Jan. 1, 2019 | Dec. 31, 2024 |
| 4 | Bubba McDonald | Jan. 1, 2021 | Dec. 31, 2026 |
| 5 | Tricia Pridemore | Jan. 1, 2019 | Dec. 31, 2024 |

In 2020, four Black voters sued the Secretary of State in federal court alleging that the at-large method of electing members of Georgia's PSC violated the Voting Rights Act. *See* Complaint, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (July 14, 2020) (ECF No. 1). After a week-long bench trial in June 2022, the district court ruled in the plaintiffs' favor and enjoined the Secretary from conducting any further PSC elections using the at-large method of election. *See* Op. and Order*, Rose v. Raffensperger*, 1:20-cv-2921-SDG (Aug. 5, 2022) (ECF No. 151).

13

Because of the *Rose* injunction, the Secretary canceled the 2022 general election for the Commissioner from District 2 and the special general election for the Commissioner from District 3 to serve the remainder of a previous Commissioner's original term. The injunction remained in place while the Secretary appealed the district court's judgment. (App. 1 at 6.)

In November 2023, the Eleventh Circuit reversed the judgment of the district court, but the district court's injunction remained in place because a judge of the Eleventh Circuit withheld the mandate. *See* Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (Dec. 18, 2023) (ECF No. 179). With the injunction still in place at the beginning of the candidate-qualifying period in March 2024, the Secretary called off the 2024 PSC elections. (App. 1 at 6.)

On April 16, 2024, this Court *sua sponte* stayed the district court's injunction in *Rose. See* Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (April 16, 2024) (ECF No. 182). The *Rose* plaintiffs filed a petition for a writ of certiorari in the United States Supreme Court, and that petition was denied on June 24, 2024. (App. 1 at 7.)

14

On March 16, 2024, the Georgia General Assembly adopted House Bill 1312, which, among other things, revises the terms of office for members of Georgia's PSC.[3] The Governor signed House Bill 1312 on April 18, 2024, and it became effective immediately.

Section 2 of House Bill 1312 adds a new section to the Georgia Code that extends the terms of each current Commissioner by at least one year and shortens the terms of the next Commissioners elected from Districts 2 and 3. Table 2 sets forth the PSC terms as revised by House Bill 1312.

**Table 2: PSC Terms as Revised by House Bill 1312**

| District | Old Term End | New Term End | Next Term |
|----------|--------------|--------------|-----------|
| 1 | Dec. 31, 2026 | Dec. 31, 2028 | 6 years |
| 2 | Dec. 31, 2022 | Dec. 31, 2025 | 5 years |
| 3 | Dec. 31, 2024 | Dec. 31, 2025 | 1 year |
| 4 | Dec. 31, 2026 | Dec. 31, 2028 | 6 years |
| 5 | Dec. 31, 2024 | Dec. 31, 2026 | 6 years |

Under House Bill 1312, then, there will be an election for Districts 2 and 3 in 2025 for a five-year term and a one-year term, respectively. Qualifying for those seats will be open from April 1 to

---

[3] A copy of House Bill 1312 is set forth in the Addendum.

4. The primary will be held on June 17. And the general election will be held on November 4. (*Id.*)

In the absence of House Bill 1312, there would be an immediate special election for *three* seats—Districts 2, 3, and 5—because the general elections at which those Commissioners should have been elected didn't occur. *See* O.C.G.A. § 21-2-504(a). It would be the duty of the Secretary of State to call those elections. *Id.* A special primary would be required. *See* O.C.G.A. §§ 21-2-540(a)(2) and 46-2-4. And the Commissioners elected then would serve out the remainder of the original term of office for their district "as measured by the Constitution." *Gonzalez*, 310 Ga. at 108-09. Elections for Districts 1 and 4 would proceed as usual in 2026. Commissioners elected then would serve a full six-year term. *See* O.C.G.A. § 46-2-1(d).

## II.   Procedural History

The plaintiffs here are one registered voter and two nonprofit organizations whose missions include environmental justice and civic engagement. (App. 1 at 2-3.) They sued the Secretary of State

on July 17, 2024, and sought a preliminary injunction on an expedited basis to enjoin the Secretary from enforcing House Bill 1312. They also sought to require the Secretary to call a special election to fill three seats on the Commission "as soon as practicable." (Pls.' Mot. Prelim. Inj. 1-2, ECF No. 2.)

The district court held an in-person status conference on July 31. The court said that it hadn't read the plaintiffs' brief and would be out of the country for much of August. (App. 17 at 44-45.) The court declined to expedite the briefing on the plaintiffs' motion. Meanwhile, the Secretary moved to dismiss, arguing that the plaintiffs lacked standing and failed to state a claim for relief.

About five months later, the district court granted the Secretary's motion to dismiss in an 18-page ruling that cites *Gonzalez* only once—and then only as authority for the four ordinary preliminary-injunction factors. (App. 20 at 16.) The court first concluded that the plaintiffs failed to state a claim "because it believes that Georgia courts are best suited to be the 'final arbitrators' of this state constitutional challenge." (*Id.* at 9.) The court next concluded that the plaintiffs lack standing because

17

House Bill 1312 doesn't "evade an election or otherwise prevent a vote" but only affects "the precise *timing* of the election"—and therefore doesn't injure the plaintiffs. (*Id.* at 11.)

Then the court turned to the merits. Even though the merits weren't at issue in the Secretary's motion to dismiss and no party had raised or briefed the question of strict scrutiny, the district court concluded that House Bill 1312 doesn't violate the Due Process Clause because it's narrowly tailored to further a compelling state interest in "avoiding rapid, simultaneous turnover of all PSC members." (*Id.* at 15.)

Finally, the court turned to the plaintiffs' motion. The court ruled that even if it had jurisdiction, the court would still deny the plaintiffs' motion. "[I]t would not serve the public interest to force Defendant to hold an election," according to the court, because "[t]he present situation was not of the Defendant or the State of Georgia's making." (*Id.* at 16-17.) Instead, according to the court, it was the fault of the *Rose* plaintiffs for seeking to vindicate their rights under the Voting Rights Act. (*Id.* at 17.)

This appeal followed. (App. 22 at 1.)

## Standards of Review

A district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiffs. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).

A district court's dismissal of a complaint for lack of standing is also subject to *de novo* review. *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021).

Lastly, the district court's alternative holding that House Bill 1312 doesn't violate the Due Process Clause was a judgment on the pleadings, which is also reviewed *de novo*. *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). The Court must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.*

## Summary of the Argument

The outcome of this appeal is squarely controlled by *Duncan*, *Gonzalez*, and the plain text of Rule 12(c).

The plaintiffs' complaint plausibly alleges a violation of the Due Process Clause under *Duncan* and *Gonzalez*—both of which held that public officials violate the Due Process Clause if they disenfranchise voters in violation of state law. *Gonzalez*, 978 F.3d at 1271; *Duncan*, 657 F.2d at 704. That's precisely what the plaintiffs allege here: House Bill 1312 canceled PSC elections in violation of the Georgia Constitution, and that cancelation disenfranchised voters in violation of the Due Process Clause. The district court simply disagreed with *Duncan* and *Gonzalez* and chose not to follow them. But those cases are binding here, and the district court's ruling to the contrary was a legal error.

The plaintiffs have standing for the same reason. McCorkle alleges a denial of her right to vote in a specific election canceled by an unconstitutional statute. That's precisely the injury alleged by the plaintiffs in *Gonzalez*. 978 F.3d at 1268 n.1. The district court ignored *Duncan* and *Gonzalez* again and held instead that

20

McCorkle failed to allege a cognizable injury because House Bill 1312 doesn't take away her right to vote in the elections it delays. (App. 20 at 11.) But that was also true in both *Duncan* and *Gonzalez*, so it's a distinction without a difference. *Gonzalez* and *Duncan* are thus dispositive on standing, too.

Finally, the district court's alternative ruling on the merits must be reversed because Rule 12 permits a judgment on the pleadings only "after the pleadings are closed." Fed. R. Civ. P. 12(c). The pleadings are closed only when an answer is filed, and the Secretary hasn't yet filed one in this case. The plaintiffs also lacked notice of the Court's intent to rule on the merits and haven't had a chance to be heard on the issue of whether House Bill 1312 satisfies strict scrutiny. As a result, a ruling on the merits of the plaintiffs' claim is premature.

## Argument

### I.    The complaint states a federal claim.

It is well established in this circuit that public officials violate the Due Process Clause if they disenfranchise voters in violation of state law. *Gonzalez*, 978 F.3d at 1271; *Duncan*, 657 F.2d at 704. In *Gonzalez,* this Court held that state officials violated Due Process by canceling an election pursuant to a state statute that violated the Georgia Constitution. 978 F.3d at 1271. In *Duncan*, the former Fifth Circuit held that the Georgia Secretary of State violated state law and the Fourteenth Amendment by failing to call a special election to fill a Supreme Court vacancy as required by state law. 657 F.2d at 708.

Here, the plaintiffs' complaint plausibly alleges a violation of the Due Process Clause under both *Duncan* and *Gonzalez*. The plaintiffs allege that House Bill 1312 effectively canceled or delayed PSC elections pursuant to a statute that violates the state constitution. (App. 1 at 3-8.) That's precisely the same federal Due-Process claim that this Court upheld in *Gonzalez*.

The district court simply ignored *Duncan* and *Gonzalez*. It didn't mention them once in its brief discussion of the plaintiffs' claim. (App. 20 at 7-9.) Perhaps that's because *Gonzalez* and *Duncan* are squarely on point and can't be distinguished from this case. But those cases are controlling authority in this circuit and must be followed or distinguished in some meaningful way. They can't simply be ignored.

The Secretary conceded below that *Duncan* held that "the disenfranchisement of a state electorate in violation of state election law" violates the Due Process Clause. (Def.'s Opp. Mot. Prelim. Inj. 16-17 (ECF No. 13) (quoting *Duncan*, 657 F.2d at 699).) Even so, he argued that *Duncan* isn't controlling here because House Bill 1312 "involves *when* elections will be held for *particular* seats on the PSC after an injunction canceled elections—not whether those elections will be held at all." (*Id.* at 18.) The Secretary tried to distinguish *Gonzalez* on the ground that *Gonzalez* involved a vacancy in the office at issue. (*Id.* at 19-20.)

But those are distinctions without a difference. Both *Duncan* and *Gonzalez* involved delayed elections. In *Duncan*, the Secretary

23

of State's refusal to call a special election to fill a position on the Georgia Supreme Court didn't mean that no election would be held. It meant only that the election would be delayed from 1981 to 1982. 657 F.2d at 707 n.7. In *Gonzalez,* the Secretary's cancellation of the 2020 election for district attorney meant only that the election would be delayed until 2022. 978 F.3d at 1269. And in both cases, the courts of appeals held that delaying the elections disenfranchised voters in violation of the Due Process Clause.

So too here. Delaying elections for three seats on the PSC from 2024 until 2025 and 2026, as House Bill 1312 does, denies Georgia voters their right under Georgia law to vote for those seats. Under *Duncan* and *Gonzalez*, that violates the Due Process Clause.

And it doesn't matter that there's no vacancy on the PSC. The Secretary's obligation to call a special election here arose not because of any vacancy but because the 2022 and 2024 elections "fail[ed] to fill" those offices as required by Georgia law. O.C.G.A. § 21-2-504(a).

The district court disagreed with the holdings of *Duncan* and *Gonzalez*, and it chose not to follow them. It didn't even try to

24

distinguish those cases, and the Secretary's attempts to distinguish them fall short. Because the plaintiffs' complaint states a federal claim under *Duncan* and *Gonzalez*, the district court's ruling to the contrary was a legal error.

## II.   McCorkle has standing to bring this claim.

To establish standing, a litigant must prove "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State,* 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The plaintiffs here allege that McCorkle has lost her right to vote in PSC elections that would have occurred but for the Secretary's administration of the unconstitutional House Bill 1312. That's precisely the injury alleged by the plaintiffs in *Gonzalez*, who were denied the right to vote for a district attorney because of a statute that delayed the election for that office. 978 F.3d at 1268 n.1; *see also Gonzalez v. Kemp*, 470 F. Supp. 3d 1343, 1346 (N.D. Ga. 2020) (the plaintiffs "are all residents and registered voters …

and intended to vote" for district attorney). McCorkle thus has standing for the same reason that the *Gonzalez* plaintiffs had standing: she alleges a denial of her right to vote in a specific election delayed by an unconstitutional statute.

The district court ignored *Duncan* and *Gonzalez* again and held instead that McCorkle failed to allege a cognizable injury because House Bill 1312 doesn't take away her right to vote in the elections it delays. (App. 20 at 11.) But, as discussed in the preceding section, that was true in both *Duncan* and *Gonzalez*. Those cases—just like this one—involved delayed elections.

The Secretary conceded below that McCorkle had alleged an injury. (Def's Br. Supp. Mot. Dismiss 9, ECF No. 12-1.) Still, he argued that McCorkle's alleged injury—the loss of her right to vote in PSC elections that would have occurred but for House Bill 1312—is only a generalized grievance insufficient to support standing here.

Not so. "[T]he Supreme Court has made clear that 'a person's right to vote is individual and personal in nature,' so 'voters who allege facts showing disadvantage to themselves as individuals

26

have standing to sue.'" *Jacobson,* 974 F.3d at 1246 (quoting *Gill v. Whitford*, 585 U.S. 48, 65-66 (2018)). McCorkle alleges a denial of her right to vote in a specific election delayed by an unconstitutional statute.

These allegations are nothing like the plaintiff's complaint in *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020). There, Wood alleged that Georgia's absentee-ballot and recount procedures violated state law and, as a result, his federal constitutional rights as a voter who had cast a ballot in the 2020 election. But this Court found that Wood alleged only a generalized grievance because he alleged no particularized injury to his own ballot. *Id.* at 1313-16. Wood had not been personally affected by the procedures at issue, and his interest in ensuring that only lawful ballots be counted could not support standing.

McCorkle, by contrast, has been personally affected here because she has been denied the right to vote in elections to which she is entitled under the state and federal constitutions. This injury is likely shared by millions of Georgia voters, but it is not "common

to all members of the public." *Id.* at 1314. It's a widespread injury, to be sure, but a particularized one.

Because McCorkle has alleged a cognizable injury, the district court's ruling to the contrary is also a legal error.

## III.   Judgment on the pleadings is premature.

Not content simply to dismiss the case on standing grounds or because of a failure to state a federal claim, the district court here also proceeded to decide the merits of the plaintiffs' claim. (App. 20 at 12-16.) It did so based entirely on the plaintiffs' complaint, on its own motion, and on grounds that no party had argued.

That, too, was a reversible error. A court may not grant judgment on the pleadings until "after the pleadings are closed." Fed. R. Civ. P. 12(c); *see, e.g., Lillian B. ex rel. Brown v. Gwinnett Cnty. Sch. Dist.*, 631 F. App'x 851, 852-53 (11th Cir. 2015) (per curiam) (reversing a district court's premature judgment on the pleadings). The pleadings are closed only when a complaint and answer have been filed. *See* Fed. R. Civ. P. 7(a). And here, the Secretary hasn't yet filed an answer.

In addition, while a court may grant judgment on the pleadings *sua sponte*, it must provide notice and an opportunity for the parties to respond. *See Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 212 (7th Cir. 1982) (affirming a *sua sponte* judgment on the pleadings "because both parties had an opportunity to be heard on the legal issue"); *cf. Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248-49 (11th Cir. 2015) ("Prior to dismissing an action on its own motion, a court must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond."); *Jefferson Fourteenth Assocs. v. Wometco de P.R., Inc.*, 695 F.2d 524, 527 (11th Cir. 1983) ("The rule that emerges from these cases is that courts exercise their inherent power to dismiss a suit that lacks merit only when the party who brought the case has been given notice and an opportunity to respond."). This procedural safeguard ensures that the parties aren't deprived of their right to be heard before a judgment is rendered.

Here, though, the plaintiffs haven't had notice or the opportunity to be heard on the issue of whether House Bill 1312 satisfies strict scrutiny. That's because the Secretary never raised

it in his briefs supporting his motion to dismiss (ECF Nos. 12-1, 16) or in his response to the plaintiffs' motion for a preliminary injunction (ECF No. 13). And the district court didn't say anything about that issue during its only status conference before issuing judgment. (App. 17.)

Judgment on the pleadings is thus premature, and this Court should therefore vacate the district court's alternative holding on the merits of the plaintiffs' claim.

## Conclusion

This is not a hard case. The district court flagrantly ignored this Court's controlling decisions in *Gonzalez* and *Duncan* and the plain text of Rule 12(c). House Bill 1312 is patently unconstitutional under settled law, and millions of Georgia citizens are being unlawfully denied the right to vote as a result. This Court should therefore reverse the district court's judgment and remand

the case for further proceedings consistent with *Duncan* and

*Gonzalez*.[4]

---

[4] The Court should also instruct the clerk of the district court to reassign this case to a different judge on remand. Reassignment here is required under 28 U.S.C. § 455 because Judge Ray has shown actual prejudice against McCorkle, describing the *Rose* case (in which McCorkle is a plaintiff) as "misguided" even though the case remains pending before another judge in the Northern District of Georgia. (App. 20 at 10 n.2.) *See generally, United States v. Gupta,* 572 F.3d 878, 891-92 (11th Cir. 2009) (discussing the circumstances under which a case may or must be reassigned on remand). Reassignment is also warranted here because Judge Ray's handling of the case—from his refusal to expedite this election matter to his failure to follow binding authority—could lead a reasonable litigant to question the "absolute impartiality and fairness of the judiciary." *Id.* at 892.

Dated: February 24, 2025

Respectfully submitted,
**/s/ Bryan L. Sells**
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of
Bryan L. Sells, LLC.
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

**/s/ Lester Tate**
Samuel Lester Tate, III
Georgia Bar No. 698835
Akin & Tate, PC
Post Office Box 878
11 South Public Square
Cartersville, Georgia 30120
(770) 382-0780
lester@akin-tate.com

*Attorneys for the Appellants*

## Certificate of Compliance

This brief complies with the type-volume limitation of Rule 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure because, excluding parts of the brief exempted by Rule 32(f), it contains 3,858 words. This brief also complies with the typeface and type-style requirements of Rule 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word for Mac.

**/s/ Bryan L. Sells**
BRYAN L. SELLS

*Attorney for the Appellants*

# Addendum

House Bill 1312 (AS PASSED HOUSE AND SENATE)

By: Representatives Jasperse of the 11th, Hagan of the 156th, and McCollum of the 30th

A BILL TO BE ENTITLED

AN ACT

1  To amend Article 1 of Chapter 2 of Title 46 of the Official Code of Georgia Annotated,

2  relating to organization and members of the Public Service Commission, so as to address the

3  delayed 2022 and 2024 elections for commissioners and maintain staggered elections and

4  terms on the commission; to revise provisions related to the election of commissioners; to

5  provide for legislative intent; to revise the terms of current commissioners; to provide a

6  schedule of general elections, special elections, and special primaries; to provide for interim

7  terms for certain commissioners; to provide that such elections shall be conducted as

8  provided by general law; to provide for related matters; to provide an effective date; to repeal

9  conflicting laws; and for other purposes.

10        BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

11                              **SECTION 1.**

12  Article 1 of Chapter 2 of Title 46 of the Official Code of Georgia Annotated, relating to

13  organization and members of the Public Service Commission, is amended by revising

14  subsections (a) and (d) of Code Section 46-2-1, relating to election of Public Service

15  Commissioners and terms of office, as follows:

H. B. 1312
- 1 -

16    ″(a)  The Georgia Public Service Commission shall consist of five members to be elected

17    as provided in this Code section. ~~The members in office on January 1, 2022, and any~~

18    ~~member appointed or elected to fill a vacancy in such membership prior to the expiration~~

19    ~~of a term of office shall continue to serve out their respective terms of office. As terms of~~

20    ~~office expire, new members~~ Members elected to the commission shall be required to be

21    residents of one of five Public Service Commission Districts as hereafter provided, but

22    each member of the commission shall be elected state wide by the qualified voters of this

23    state who are entitled to vote for members of the General Assembly.  Except as otherwise

24    provided in this Code section, the election shall be held under the same rules and

25    regulations as apply to the election of Governor.  The Commissioners~~, who~~ shall give their

26    entire time to the duties of their offices~~,~~.  Except as otherwise provided for in this chapter,

27    the Commissioners shall be elected at the general election next preceding the expiration of

28    the terms of office of the respective incumbents, and~~. Their~~ their terms of office shall be

29    six years and shall expire on December 31.″

30    ″(d)(1)  Those members of the commission elected at the 2020 general election, and any

31    person appointed to fill a vacancy in such office, and those members of the commission

32    serving in seats that were scheduled to be filled in either the 2022 or 2024 general

33    election, shall serve the terms provided for in Code Section 46-2-1.1 and until their

34    successors are elected and qualified.  Notwithstanding any other law to the contrary,

35    successors to such members shall be elected as provided for in Code Section 46-2-1.1 and

36    shall serve the terms to which they were elected and until their successors are elected and

37    qualified.  ~~The first members of the commission elected under this Code section shall be~~

38    ~~elected thereto on the Tuesday next following the first Monday in November, 2024, from~~

39    ~~Public Service Commission Districts 3 and 5, shall take office on the first day of January~~

40    ~~immediately following that election, and shall serve for terms of office of six years and~~

41    ~~until the election and qualification of their respective successors. Those members of the~~

42    ~~commission elected thereto on the Tuesday next following the first Monday in~~

43  ~~November, 2026, from Public Service Commission Districts 1 and 4 shall take office on~~

44  ~~the first day of January immediately following that election and shall serve for terms of~~

45  ~~office of six years and until the election and qualification of their respective successors.~~

46  ~~The member of the commission elected thereto on the Tuesday next following the first~~

47  ~~Monday in November, 2022, from Public Service Commission District 2 shall take office~~

48  ~~on the first day of January immediately following that election and shall serve for a term~~

49  ~~of office of six years and until the election and qualification of his or her respective~~

50  ~~successor.~~

51  (2)  Except as provided for in paragraph (1) of this subsection, all ~~All~~ future successors

52  to members of the commission whose terms of office are to expire shall be elected at the

53  state-wide general election immediately preceding the expiration of such terms, shall take

54  office on the first day of January immediately following that election, and shall serve for

55  terms of office of six years."


56                              **SECTION 2.**

57  Said article is further amended by adding a new Code section to read as follows:

58  "46-2-1.1.

59  (a)  The provisions of this Code section are intended to address the situation created as a

60  result of elections for Public Service Commission Districts 2, 3, and 5 not being conducted

61  in 2022 or 2024 pursuant to an injunction issued in *Rose v. Raffensperger*, 619 F. Supp. 3d

62  1241 (N.D. Ga., 2022), and is further intended to preserve the state's interest in ensuring

63  that members of the commission are elected in staggered elections and serve staggered

64  terms.

65  (b)  Those members of the commission in office on January 1, 2024, as well as any person

66  appointed to fill a vacancy in such office, shall serve the term provided for in this Code

67  section and until their successors are elected and qualified as provided for in this

68  subsection:


H. B. 1312

- 3 -

69    (1)  A state-wide general election for Public Service Commission District 1 shall be held

70    on the Tuesday following the first Monday in November, 2028.  The commissioner

71    elected at such election shall serve a six-year term beginning on January 1, 2029, and

72    ending on December 31, 2034;

73    (2)  A state-wide special election for Public Service Commission District 2 shall be held

74    on the same day as the 2025 municipal general election, the Tuesday following the first

75    Monday in November, 2025.  The commissioner elected at such election shall serve a

76    five-year term beginning on January 1, 2026, and ending on December 31, 2030;

77    (3)  A  state-wide special election for Public Service Commission District 3 shall be held

78    on the same day as the 2025 municipal general election, the Tuesday following the first

79    Monday in November, 2025.  The commissioner elected at such election shall serve a

80    one-year term beginning on January 1, 2026, and ending on December 31, 2026;

81    (4)  A state-wide general election for Public Service Commission District 4 shall be held

82    on the Tuesday following the first Monday in November, 2028.  The commissioner

83    elected at such election shall serve a six-year term beginning on January 1, 2029, and

84    ending on December 31, 2034; and

85    (5)  A state-wide general election for Public Service Commission District 5 shall be held

86    on the Tuesday following the first Monday in November, 2026.  The commissioner

87    elected at such election shall serve a six-year term beginning on January 1, 2027, and

88    ending on December 31, 2032.

89    (c)  Notwithstanding any other provision of law to the contrary on the timing of special

90    primary elections, for the Public Service Commission District 2 and 3 special elections

91    provided for in subsection (b) of this Code section, a special primary shall be held on the

92    third Tuesday in June, 2025.  The period during which a candidate may qualify to run for

93    the special primary and special election for Public Service Commission Districts 2 and 3

94    shall be held on the eleventh week prior to the date of such special primary election and

95    shall remain open for a period of two and one-half days.

96      (d)  Unless otherwise provided for in this Code section, the special primary elections,

97      special elections, and general elections provided for in this Code section shall be held and

98      conducted in all respects in accordance with the provisions of Chapter 2 of Title 21, the

99      'Georgia Election Code.'

100     (e)  Successors to the commission elected pursuant to this Code section shall be elected

101     pursuant to Code Section 46-2-1."


102                                    **SECTION 3.**

103     This Act shall become effective upon its approval by the Governor or upon its becoming law

104     without such approval.


105                                    **SECTION 4.**

106     All laws and parts of laws in conflict with this Act are repealed.