## No. 25-10114-H

In the
# United States Court of Appeals
# For the Eleventh Circuit

---

BRIONTÉ McCORKLE et al.,

*Plaintiffs – Appellants*

v.

SECRETARY OF STATE FOR THE STATE OF GEORGIA,

*Defendant – Appellee*

---

Appeal from the United States District Court
For the Northern District of Georgia

---

## APPELLANTS' MOTION TO EXPEDITE
## OR FOR SUMMARY REVERSAL

---

Samuel Lester Tate, III
Akin & Tate, PC
Post Office Box 878
11 South Public Square
Cartersville, Georgia 30120
(770) 382-0780
lester@akin-tate.com

Bryan L. Sells
The Law Office of
Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

*Attorneys for the Appellants*

**McCorkle v. Secretary of State for the State of Georgia
25-10114-H**

**Certificate of Interested Persons and
Corporate Disclosure Statement**

I certify that the following persons and entities have or may have an interest in the outcome of this case:

Akin & Tate, PC

Carr, Christopher

Clark Hill PLC

Georgia Conservation Voters Education Fund, Inc.

Georgia WAND Education Fund, Inc.

Jacoutot, Bryan Francis

LaRoss, Diane Festin

McCorkle, Brionté

Mullinax, Zachary

O'Kelley, Elijah J.

Petrany, Stephen

Raffensperger, Brad

C-1 of 2

2

## McCorkle v. Secretary of State for the State of Georgia
## 25-10114-H

Ray II, William

Sells, Bryan L.

Tate, Samuel Lester III

The Election Law Group

The Law Office of Bryan L. Sells, LLC

Tyson, Bryan P.

Webb, Bryan

Young, Elizabeth

I further certify that neither Georgia Conservation Voters Education Fund, Inc. nor Georgia WAND Education Fund, Inc. has a parent company and that no publicly held corporation owns 10 percent or more of their stock.


**/s/ Bryan L. Sells**
Attorney for the Appellants
May 20, 2025


C-2 of 2

# Table of Contents

Certificate of Interested Persons and
Corporate Disclosure Statement .......................................................... 2

Table of Contents ................................................................................. 4

Table of Citations ................................................................................ 5

Introduction .......................................................................................... 9

Background ......................................................................................... 11

I.    House Bill 1312 ........................................................................... 11

II.   Procedural History ..................................................................... 15

Argument ............................................................................................ 17

I.    The Court should expedite this appeal. .................................... 17

II.   Alternatively, the Court should summarily reverse. ............... 19

      A.   McCorkle has standing to bring this claim. ................... 19

      B.   The complaint states a well-established federal claim.. 25

      C.   The district court's alternative holding was
           procedurally improper and wrong on the merits. .......... 27

Conclusion .......................................................................................... 30

Certificate of Compliance ................................................................. 32

# Table of Citations

## Cases

*Afran v. McGreevy*,
  115 F. App'x 539 (3d Cir. 2004) .................................................. 26

*Bergland v. Harris*,
  767 F.2d 1551 (11th Cir. 1985) ................................................... 18

*Bodine v. Elkhart County Election Board*,
  788 F.2d 1270 (7th Cir. 1986) ..................................................... 27

*Bonas v. Town of North Smithfield*,
  265 F.3d 69 (1st Cir. 2001)........................................................... 26

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) ................................................... 10

*Brown v. Florida*,
  No. 11-14554 (11th Cir. Oct. 25, 2011) ........................................ 18

*Common Cause/Georgia v. Billups*,
  No. 05-17584 (11th Cir. Oct. 27, 2005) ........................................ 18

*Cowen v. Secretary of State*,
  No. 21-13199 (11th Cir. Nov. 17, 2021) ........................................ 18

*Delgado v. Smith*,
  861 F.2d 1489 (11th Cir. 1988) ................................................... 18

*Duncan v. Poythress*,
  657 F.2d 691 (5th Cir. 1981) ........................... 10, 14, 25, 26, 27, 30

*Election Integrity Project California, Inc. v. Weber*,
  113 F.4th 1072 (9th Cir. 2024).................................................... 27

*Flora v. Home Federal Savings & Loan Association*,
  685 F.2d 209 (7th Cir. 1982) ...................................................... 28

*Foster v. Love,*
  522 U.S. 67 (1997) ........................................................................ 24

*Gonzalez v. Governor of Georgia,*
  978 F.3d 1266 (11th Cir. 2020) ................................... 10, 20, 25, 30

*Gonzalez v. Kemp,*
  470 F. Supp. 3d 1343 (N.D. Ga. 2020) ......................................... 20

*Groendyke Transport, Inc. v. Davis,*
  406 F.2d 1158 (5th Cir. 1969) ...................................................... 19

*Henry v. Sheriff of Tuscaloosa County,*
  __F. 4th __, 2025 WL 1177671 (11th Cir. Apr. 23, 2025) ............ 29

*Hill v. White,*
  321 F.3d 1334 (11th Cir. 2003) .................................................... 19

*Jacobson v. Florida Secretary of State,*
  974 F.3d 1236 (11th Cir. 2020) .................................................... 20

*Jefferson Fourteenth Associates v. Wometco de Puerto Rico,*
  *Inc.*, 695 F.2d 524 (11th Cir. 1983) ............................................. 28

*Kemp v. Gonzalez,*
  310 Ga. 104 (2020)........................................................................ 15

*Lillian B. ex rel. Brown v. Gwinnett County School District,*
  631 F. App'x 851 (11th Cir. 2015)................................................ 28

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ................................................................ 20, 21

*Memphis County School District v. Stachara,*
  477 U.S. 299 (1986) ...................................................................... 22

*Polelle v. Florida Secretary of State,*
  131 F.4th 1201 (11th Cir. 2025).................................. 20, 21, 22, 30

*Robins v. Ritchie,*
    631 F.3d 919 (8th Cir. 2011) ......................................................... 27

*Rose v. Secretary, State of Georgia,*
    No. 22-12593 (11th Cir. Aug. 19, 2022) ....................................... 18

*Sierra v. City of Hallandale Beach,*
    996 F.3d 1110 (11th Cir. 2021) .................................................... 19

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ..................................................................... 21

*Surtain v. Hamlin Terrace Foundation,*
    789 F.3d 1239 (11th Cir. 2015) .................................................... 28

*United States v. Dallas County Commission,*
    904 F.2d 26, (11th Cir. 1990) ...................................................... 18

*Welch v. McKenzie,*
    765 F.2d 1311 (5th Cir. 1985) ..................................................... 27

*Wood v. Raffensperger,*
    981 F.3d 1307 (11th Cir. 2020) ................................................... 23

**Constitutional Provision**

Ga. Const. art. IV, §I, ¶1 ................................................................ 11

**Statutes**

28 U.S.C. § 1657 ............................................................................ 17

O.C.G.A. § 21-2-504 ..................................................................... 14

O.C.G.A. § 46-2-1 .................................................................... 11, 15

O.C.G.A. § 46-2-1.1 ....................................................................... 13

## Other Authorities

Complaint, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (July 14, 2020) (ECF 1) .................................................................................. 11

Opinion and Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (Aug. 5, 2022) (ECF 151) ................................................................ 12

Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (April 16, 2024) (ECF 182) ............................................................................... 13

Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (Dec. 18, 2023) (ECF 179) ............................................................................... 13

## Rules

Federal Rule of Appellate Procedure 27 .......................................... 32

Federal Rule of Appellate Procedure 32 .......................................... 32

Federal Rule of Civil Procedure 12 .................................................. 28

Federal Rule of Civil Procedure 7 .................................................... 28

## Introduction

The appellants respectfully move the Court to expedite this appeal or to reverse summarily. This is a rare case that meets the standards for expedited consideration and summary reversal because time is truly of the essence and the outcome is squarely controlled by binding precedent.

At issue is House Bill 1312, a 2024 Georgia law that purports to change the constitutional terms of members of Georgia's Public Service Commission. The PSC is a five-member administrative body that regulates public utilities and sets the rates that Georgians pay for gas and electricity. Because of House Bill 1312, the Secretary failed to call a special election for three seats on the PSC that would have otherwise occurred in 2024. Also because of House Bill 1312, the Secretary has called an election for two of those seats in November 2025—but for shorter terms of office than prescribed by Georgia's constitution. The third seat that should have been elected in 2024 won't go before the voters until 2026, and seats that should be on the ballot in 2026 have been delayed until 2028.

The Secretary's enforcement of House Bill 1312 has disenfranchised Georgia voters and thereby violates the United States Constitution under binding authority in this circuit. *See Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir. 1981) (holding that the Secretary of State violated the Due Process Clause by failing to call a special election required by state law to fill a seat on the Georgia Supreme Court).[1] A unanimous panel of this Court recently reaffirmed that precedent in *Gonzalez v. Governor of Georgia*, 978 F.3d 1266 (11th Cir. 2020) (Branch, J.) (holding that the Secretary of State violated the Due Process Clause by canceling an election pursuant to a state statute that violated the Georgia Constitution).

The district court, Judge William Ray II, disagreed with *Duncan* and *Gonzalez,* chose not to follow them, and dismissed the plaintiffs' complaint. That makes this an easy case, and one well-suited to expedited consideration or summary reversal.

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

10

# Background

## I.    House Bill 1312

Georgia's Constitution provides that the terms of all members of the Public Service Commission "shall be for six years." Ga. Const. art. IV, §I, ¶1(a). The Constitution commits the time and manner of their election to the General Assembly, which has provided that commissioners "shall be elected state wide" but must reside in one of five districts prescribed by statute. O.C.G.A. § 46-2-1. The term of office for each current Commissioner before House Bill 1312 is set forth in Table 1.

**Table 1: PSC Terms of Office before House Bill 1312**

| District | Commissioner | Term Start | Term End |
|---|---|---|---|
| 1 | Jason Shaw | Jan. 1, 2021 | Dec. 31, 2026 |
| 2 | Tim Echols | Jan. 1, 2017 | Dec. 31, 2022 |
| 3 | Fitz Johnson | Jan. 1, 2019 | Dec. 31, 2024 |
| 4 | Bubba McDonald | Jan. 1, 2021 | Dec. 31, 2026 |
| 5 | Tricia Pridemore | Jan. 1, 2019 | Dec. 31, 2024 |

In 2020, four Black voters sued the Secretary of State in federal court, alleging that the at-large method of electing PSC members violated the Voting Rights Act. *See* Complaint, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (July 14, 2020) (ECF 1). After a

11

week-long bench trial in June 2022, the district court ruled in the plaintiffs' favor and enjoined the Secretary of State from conducting any further PSC elections using the at-large method of election. *See* Opinion and Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (Aug. 5, 2022) (ECF 151).

As a result of the *Rose* injunction, the Secretary canceled the 2022 general election for the commissioner from District 2 and a special general election for the commissioner from District 3. The injunction remained in place while the Secretary appealed the district court's judgment. (App. 1 at 6.)[2] And the General Assembly chose not to adopt an alternative method of election that would have allowed PSC elections to go forward while the injunction was in place.

In November 2023, the Eleventh Circuit reversed the judgment of the district court, but the district court's injunction remained in place because a judge of the Eleventh Circuit withheld

---

[2] The appellants have attached a documentary appendix to this motion. Throughout this document, citations to the appendix will be in the form "App. ECF No. at Page."

the issuance of the mandate. *See* Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (Dec. 18, 2023) (ECF 179). With the injunction still in place at the beginning of the candidate-qualifying period in March 2024, the Secretary called off the 2024 elections for members of the PSC. (App. 1 at 6.)

On April 16, 2024, this Court stayed the district court's injunction on its own motion. *See* Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (April 16, 2024) (ECF 182). Two days later, the Governor signed House Bill 1312, and it became effective immediately. (App. 1 at 7.)

Section 2 of House Bill 1312 adds a new section to the Georgia Code that extends the terms of each current commissioner by at least one year and shortens the terms of the next commissioners elected from Districts 2 and 3. O.C.G.A. § 46-2-1.1. Table 2 sets forth the PSC terms as revised by House Bill 1312.

**Table 2: PSC Terms as Revised by House Bill 1312**

| District | Old Term End | New Term End | Next Term |
|:---:|:---:|:---:|:---:|
| 1 | Dec. 31, 2026 | Dec. 31, 2028 | 6 years |
| 2 | Dec. 31, 2022 | Dec. 31, 2025 | 5 years |
| 3 | Dec. 31, 2024 | Dec. 31, 2025 | 1 year |
| 4 | Dec. 31, 2026 | Dec. 31, 2028 | 6 years |
| 5 | Dec. 31, 2024 | Dec. 31, 2026 | 6 years |

Under House Bill 1312, there will be an election for the commissioners from Districts 2 and 3 in 2025 for a five-year term and a one-year term, respectively.

In the absence of House Bill 1312, there would have been an immediate special election for *three* seats—for the commissioners from Districts 2, 3, and 5—because the general elections at which those commissioners should have been elected failed to fill those seats. *See* O.C.G.A. § 21-2-504(a) (requiring a special election "[w]henever any primary or election shall fail to fill a particular nomination or office").[3] It would be the duty of the Secretary of State to call those elections. *Id.* And the commissioners elected then would serve out the remainder of the original term of office for their district "as measured by the Constitution." *Kemp v. Gonzalez*, 310

---

[3] An election might fail to fill a nomination or office because of a natural disaster or because no candidates qualified to run, for example, but here the 2022 general election failed to fill the offices of the commissioners from Districts 2 and 3 because the Secretary of State removed the offices from the ballot after the district court's injunction. See also Duncan, 657 F.2d at 698; (holding that, under the plain meaning of the statute's text, "a special election is required when an officeholder withdraws from a future term"); id. at 705.

Ga. 104, 108-09 (2020). Elections for Districts 1 and 4 would proceed as usual in 2026. Commissioners elected then would serve a full six-year term. *See* O.C.G.A. § 46-2-1(d).

## II.    Procedural History

The plaintiffs are one registered voter and two nonprofit organizations whose missions include environmental justice and civic engagement. (App. 1 at 2-3.) They sued the Secretary of State on July 17, 2024, and sought a preliminary injunction on an expedited basis to enjoin the Secretary from enforcing House Bill 1312. They also sought to require the Secretary to call a special election to fill three seats on the Commission "as soon as practicable." (Pls.' Mot. Prelim. Inj. 1-2, ECF No. 2.)

The district court held an in-person status conference on July 31. The court said that it hadn't read the plaintiffs' brief and would be out of the country for much of August. (App. 17 at 44-45.) The court declined to expedite the briefing on the plaintiffs' motion. Meanwhile, the Secretary moved to dismiss, arguing that the plaintiffs lacked standing and failed to state a claim for relief.

About five months later, the district court granted the Secretary's motion to dismiss in an 18-page ruling that cites *Gonzalez* only once—and then only as authority for the four ordinary preliminary-injunction factors. (App. 20 at 16.) The court first concluded that the plaintiffs failed to state a claim "because it believes that Georgia courts are best suited to be the 'final arbitrators' of this state constitutional challenge." (*Id.* at 9.) The court next concluded that the plaintiffs lack standing because House Bill 1312 doesn't "evade an election or otherwise prevent a vote" but only affects "the precise *timing* of the election"—and therefore doesn't injure the plaintiffs. (*Id.* at 11.)

Then the court turned to the merits. Even though the merits weren't at issue in the Secretary's motion to dismiss and no party had raised or briefed the question of strict scrutiny, the district court concluded that House Bill 1312 doesn't violate the Due Process Clause because it's narrowly tailored to further a compelling state interest in "avoiding rapid, simultaneous turnover of all PSC members." (*Id.* at 15.)

16

Finally, the court turned to the plaintiffs' motion. The court ruled that even if it had jurisdiction, the court would still deny the plaintiffs' motion. "[I]t would not serve the public interest to force Defendant to hold an election," according to the court, because "[t]he present situation was not of the Defendant or the State of Georgia's making." (*Id.* at 16-17.) Instead, according to the court, it was the fault of the *Rose* plaintiffs for seeking to vindicate their rights under the Voting Rights Act. (*Id.* at 17.)

This appeal followed.

## Argument

### I.    The Court should expedite this appeal.

Under this Court's internal operating procedures, an appeal may be expedited "for good cause shown." 11th Cir. R. 27, I.O.P. 3. In addition, the federal courts "shall expedite" civil actions for good cause, which "is shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates a request for expedited consideration has merit." 28 U.S.C. § 1657(a).

17

This Court has frequently granted motions to expedite in election-related cases. *See, e.g., Rose v. Sec'y, State of Ga.*, No. 22-12593 (11th Cir. Aug. 19, 2022); *Cowen v. Sec'y of State*, No. 21-13199 (11th Cir. Nov. 17, 2021); *Brown v. Florida*, No. 11-14554 (11th Cir. Oct. 25, 2011); *Common Cause/Georgia v. Billups*, No. 05-17584 (11th Cir. Oct. 27, 2005); *United States v. Dallas Cnty. Comm'n*, 904 F.2d 26, 28 (11th Cir. 1990) (per curiam) ; *Delgado v. Smith*, 861 F.2d 1489, 1490 (11th Cir. 1988); *Bergland v. Harris*, 767 F.2d 1551, 1555 (11th Cir. 1985).

Expedited consideration here would serve the interests of all Georgia voters in this important election matter. The next general elections for the PSC are scheduled for November 2025 and November 2026, and expedited consideration is appropriate to balance the constitutional rights of Georgia citizens with the State's interest in minimizing disruption to its election cycles.

Everything about this case is well-suited to expedited consideration. Briefing is complete. There are no fact issues. And the outcome turns on the straightforward application of binding

18

authority. Accordingly, the Court should put this case on the next feasible argument calendar.

## II.    Alternatively, the Court should summarily reverse.

Summary disposition is appropriate where "time is truly of the essence" or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where, as is more frequently the case, the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969) . This appeal meets both parts of that standard because it involves a time-sensitive election matter and binding precedent requires reversal.

A district court's dismissal of a complaint for failure to state a claim is reviewed *de novo*, *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam), as is a dismissal for lack of standing, *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021).

## A.    McCorkle has standing to bring this claim.

To establish standing, a litigant must prove "(1) an injury in fact that (2) is fairly traceable to the challenged action of the

19

defendant and (3) is likely to be redressed by a favorable decision."
*Jacobson v. Fla. Sec'y of State,* 974 F.3d 1236, 1245 (11th Cir. 2020)
(citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The plaintiffs here allege that McCorkle has lost her right to
vote in PSC elections that would have occurred but for the
Secretary's enforcement of the unconstitutional House Bill 1312.
That's precisely the injury alleged by the plaintiffs in *Gonzalez*,
who were denied the right to vote for a district attorney when the
Secretary canceled an election under a statute that violated the
state constitution. 978 F.3d at 1268 n.1; *see also Gonzalez v. Kemp*,
470 F. Supp. 3d 1343, 1346 (N.D. Ga. 2020) (the plaintiffs "are all
residents and registered voters … and intended to vote" for district
attorney). McCorkle thus has standing for the same reason that the
*Gonzalez* plaintiffs had standing: she alleges a denial of her right to
vote in specific elections that the Secretary failed to call because of
an unconstitutional statute.

McCorkle also has standing under this Court's recent decision
in *Polelle v. Florida Secretary of State*, 131 F.4th 1201 (11th Cir.
2025). That case addressed an unaffiliated voter's claim that

20

Florida's closed primary system violated his rights under the First and Fourteenth Amendments by denying him the ability to vote in primary elections for partisan public offices. 131 F.4th at 1205-06. The district court dismissed the voter's claim for lack of standing, but this Court reversed, holding (among other things) that the voter's alleged injury to his fundamental right to vote was both concrete and particularized. *Id.* at 1208-16.

An injury is sufficiently concrete for standing purposes if it constitutes an "invasion of a legally protected interest." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In *Polelle*, this Court held that the voter's alleged injury was sufficiently concrete both because he had alleged a violation of his constitutional rights and because voting claims "are the 'kind' of injury for which Americans have always sued to seek redress." 131 F.4th at 1209-10.

So too here. McCorkle has alleged that House Bill 1312 violates her constitutional rights by unlawfully cancelling PSC elections in which she would have otherwise been able to vote.

21

(App. 1 at 3-8.) Under *Polelle*, that's sufficiently concrete for standing purposes.

The Court also described the voter's alleged injury in *Polelle* as "certainly particularized." *Id.* at 1208. That's because the Eleventh Circuit and the Supreme Court "have long recognized that voters assert a 'particular injury' when they allege *their* 'inability to vote in a particular election.'" *Id.* at 1209 (quoting *Memphis Cnty. Sch. Dist. v. Stachara*, 477 U.S. 299, 312 n.14 (1986)). And just like the voter in *Polelle*, McCorkle alleges that a state statute limits *her* "ability to vote" in particular elections. *Jacobson*, 974 F.3d at 1246. So her complaint "adequately identifies disadvantage to [herself] as an individual" to satisfy the particularity requirement of the standing doctrine. *Polelle*, 131 F.4th at 1209 (cleaned up).

The district court's conclusion that McCorkle lacks standing is thus foreclosed by *Polelle,* which was decided three months after the district court dismissed the plaintiffs' complaint. But the district court's conclusion was wrong even on the day it was decided.

22

McCorkle's alleged injuries are nothing like the plaintiff's grievance in *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020), on which the district court relied. There, Wood alleged that Georgia's absentee-ballot and recount procedures violated state law and, as a result, his federal constitutional rights as a voter who had cast a ballot in the 2020 election. But this Court found that Wood alleged only a generalized grievance because he alleged no particularized injury to his own ballot. *Id.* at 1313-16. Wood had not been personally affected by the procedures at issue, and his interest in ensuring that only lawful ballots be counted could not support standing.

McCorkle, by contrast, has been personally affected here because she has been denied the right to vote in elections to which she is entitled under the state and federal constitutions. This injury is likely shared by millions of Georgia voters, but it is not "common to all members of the public." *Id.* at 1314. It's a widespread injury, to be sure, but a particularized one.

The district court's unsupported conclusion that McCorkle has no cognizable interest in the timing of an election also lacks

23

merit. The court cited no authority for that conclusion, which seems doubtful as a matter of law. *See, e.g., Foster v. Love*, 522 U.S. 67 (1997) (holding, in a challenge brought by Louisiana voters, that a state statute permitting congressional elections in October violated a federal law requiring congressional elections in November).

The court's assertion that McCorkle's alleged injury only concerned the timing of the election is also inaccurate as a matter of fact. In the absence of House Bill 1312, McCorkle would have had the opportunity to vote for three commissioners in 2024, including (for example) a commissioner from District 3 for a six-year term ending in 2030. It's not as though House Bill 1312 simply moved those elections to another day. Instead, House Bill 1312 calls for two elections in 2025, including a commissioner from District 3 for a one-year term ending in 2026. House Bill 1312 canceled one set of elections and replaced them with different elections held at a different time. So the district court's conclusion that McCorkle's alleged injury is only about the "timing of the election" doesn't withstand scrutiny as a matter of fact. (App. 20 at 11.)

24

If there were any doubt about McCorkle's standing when she brought this case—and there shouldn't have been, given *Gonzalez*—there isn't now. *Polelle* controls on standing, so the district court's holding that McCorkle doesn't have standing merits summary reversal.

### B.    The complaint states a well-established federal claim.

It is well established that public officials violate the Due Process Clause if they disenfranchise voters in violation of state law. *Gonzalez*, 978 F.3d at 1271; *Duncan*, 657 F.2d at 704. In *Gonzalez,* this Court held that state officials violated the Due Process Clause by canceling an election pursuant to a state statute that violated the Georgia Constitution. 978 F.3d at 1271. In *Duncan*, the former Fifth Circuit held that the Georgia Secretary of State violated state law and the Due Process Clause by failing to call a special election to fill seat on the Georgia Supreme Court as required by state law. 657 F.2d at 708.

Here, the plaintiffs' complaint plausibly alleges a violation of the Due Process Clause under both *Duncan* and *Gonzalez*.

McCorkle alleges that the Secretary has disenfranchised her by failing to call certain PSC elections because of a statute that violates the state constitution. (App. 1 at 3-8.) That's precisely the same federal due-process claim that this Court upheld in *Duncan* and *Gonzalez*.

The district court simply ignored *Duncan* and *Gonzalez*, concluding that the plaintiffs had failed to state a claim only "because it believes that Georgia courts are best suited to be the 'final arbitrators' of this state constitutional challenge." (App. 20 at 9.) It didn't mention *Duncan* or *Gonzalez* once in its brief discussion of the plaintiffs' claim. (App. 20 at 7-9.) But those cases are controlling authority in this circuit and must be followed or distinguished in some meaningful way. They can't simply be ignored.

*Duncan* and *Gonzalez* aren't outliers, either. *Duncan* has been cited with approval by at least five other federal circuits. *See, e.g., Bonas v. Town of N. Smithfield*, 265 F.3d 69, 75 (1st Cir. 2001) (citing *Duncan* with approval); *Afran v. McGreevy*, 115 F. App'x 539, 544 (3d Cir. 2004) (same); *Bodine v. Elkhart Cnty. Election*

26

*Bd.*, 788 F.2d 1270, 1272 (7th Cir. 1986) (same); *Robins v. Ritchie*, 631 F.3d 919, 926 (8th Cir. 2011) (same); *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1096-97 (9th Cir. 2024) (same); *see also, e.g., Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985) (same). And neither the Supreme Court nor any federal circuit court has cast doubt on *Duncan's* original holding or its continuing vitality.

Because the plaintiffs' complaint states a federal claim under *Duncan* and *Gonzalez*, the district court's ruling to the contrary should be summarily reversed.

## C.    The district court's alternative holding was procedurally improper and wrong on the merits.

Not content simply to dismiss the case on standing grounds or because of a failure to state a federal claim, the district court here also proceeded to decide the merits of the plaintiffs' claim. (App. 20 at 12-16.) It did so based entirely on the plaintiffs' complaint, on its own motion, and on grounds that no party had argued.

That, too, was a reversible error. A court may not grant judgment on the pleadings until "after the pleadings are closed."

27

Fed. R. Civ. P. 12(c); *see, e.g., Lillian B. ex rel. Brown v. Gwinnett Cnty. Sch. Dist.*, 631 F. App'x 851, 852-53 (11th Cir. 2015) (per curiam) (reversing a district court's premature judgment on the pleadings). The pleadings are closed only when a complaint and answer have been filed. *See* Fed. R. Civ. P. 7(a). And here, the Secretary hasn't yet filed an answer.

In addition, while a court may grant judgment on the pleadings *sua sponte*, it must provide notice and an opportunity for the parties to respond. *See Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 212 (7th Cir. 1982) (affirming a *sua sponte* judgment on the pleadings "because both parties had an opportunity to be heard on the legal issue"); *cf. Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248-49 (11th Cir. 2015) ("Prior to dismissing an action on its own motion, a court must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond."); *Jefferson Fourteenth Assocs. v. Wometco de P.R., Inc.*, 695 F.2d 524, 527 (11th Cir. 1983) ("The rule that emerges from these cases is that courts exercise their inherent power to dismiss a suit that lacks merit only when the party who brought the case has been

28

given notice and an opportunity to respond."). This procedural safeguard ensures that the parties aren't deprived of their right to be heard before a judgment is rendered.

Here, though, the plaintiffs didn't get notice or the opportunity to be heard on the issue of whether House Bill 1312 satisfies strict scrutiny. The words "strict," "scrutiny," and "compelling" appear nowhere in any of the Secretary's briefs. (ECF Nos. 12-1, 13, 16) None of those words were uttered during the court's only status conference before issuing judgment. (App. 17.) The district court's strict-scrutiny ruling was thus premature.

It was also wrong on the merits. When, as here, a challenged action burdens a fundamental right, "the government action that burdens the right is presumptively wrongful, and the government bears the burden to show that its action is narrowly tailored to serve a compelling state interest." *Henry v. Sheriff of Tuscaloosa Cnty.*, __F. 4th __, 2025 WL 1177671, at *8 (11th Cir. Apr. 23, 2025). The district court failed to apply the required presumption of wrongfulness, and it didn't hold the government to its burden. (App. 20 at 15.) And even if the state interest upon which the

district court relied ("address[ing] the specific uncertainty surrounding the upcoming election and the requisite procedure") were compelling—which seems doubtful—it's obvious that House Bill 1312 isn't narrowly tailored to serve that interest because its term-altering provisions affect PSC elections beyond just the "upcoming" one. Nor was there any need to change state election procedures once this Court lifted the district court's injunction.

The district court's ruling on the merits of the plaintiffs' claim is thus plainly inadequate, and this Court should waste no time in vacating it.

## Conclusion

*Duncan, Gonzalez,* and *Polelle* make this an easy case. The plaintiffs' complaint alleges a well-established federal claim, and McCorkle has standing to bring it. The district court's alternative holding on the merits is plainly wrong. The Court should therefore reverse the district court's judgment and remand the case for further proceedings.

Dated: May 20, 2025

Respectfully submitted,

**/s/ Bryan L. Sells**
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of
Bryan L. Sells, LLC.
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

**/s/ Lester Tate**
Samuel Lester Tate, III
Georgia Bar No. 698835
Akin & Tate, PC
Post Office Box 878
11 South Public Square
Cartersville, Georgia 30120
(770) 382-0780
lester@akin-tate.com

*Attorneys for the Appellants*

## Certificate of Compliance

This document complies with the type-volume limitation of Rule 27(d) of the Federal Rules of Appellate Procedure because, excluding parts of the document exempted by Rule 32(f) , it contains 4,089 words. This document also complies with the typeface and type-style requirements of Rule 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word for Mac.

**/s/ Bryan L. Sells**
Attorney for the Appellants
May 20, 2025